And we'll turn to the other case to be argued today, which is 20-4248 Commodities & Minerals Enterprise Limited. Mr. Wolf. Yes, good afternoon, your honors, and may it please the court. Garth Wolfson for the Appellant FMO. I'd like to jump right in with perhaps the most straightforward issue, which is sticking with the FSIA, whether issuance and service of a summons is required when commencing an action to enforce an arbitration award. The statute, the FSIA statute speaks quite clearly about the requirement of a summons. Mr. Wolfson, you've twice now referred to a requirement under the FSIA of a summons, right? That's not what it says though, is it? It says the summons and complaint must be served. Where is the summons and complaint in a petition to confirm an arbitration? Is there any such thing? Yes, there would be a summons in the ordinary course. It doesn't seem so. I mean, your adversary cites a district court case where the court had an affidavit that someone tried to get a summons and was told no, because rule 4B, as I read it, the Federal Rules of Civil Procedure says you get a summons by presenting the clerk with a complaint, but there's no complaint in this kind of case. Well, there's a petition, which is the functional equivalent of a complaint. So perhaps the functional equivalent of a summons and complaint will do? No, because I think the FSIA is quite clear about a summons being required, and the reason for- Well, wait, wait, I'm sorry, but you're saying on the one hand, the FSIA is clear there has to be a summons and complaint, even in an arbitration petition case. Then you say, but it doesn't have to really be a complaint. It can be a petition, and that would be the functional equivalent. But then you say when the petition is served, that's not good enough because it's not the summons and complaint. Let me be clear. I don't wanna, it's not, I think it's not about semantics or it shouldn't be about semantics. So if you put something at the top of an ordinary looking summons, and it says something other like call into court, for example, as a title to that document, and it still acts like a duck and quacks like a duck and is a summons and is signed off on by the clerk of the court, then I think that would be a summons. And I think the same thing would go with it, whether it's a petition or a complaint. I think- But you're suggesting at the same time that the FSIA determines very specifically that this is all very important when really all it says is the documents that file the loss that comprise the lawsuit, the documents have to be served. And it's obviously thinking about the normal case where there is both a summons and a complaint. Yet here there is neither. So I don't know if that's a matter of semantics. That's a question of what, is there really some indication that Congress in the FSIA created a specific requirement that very particular types of documents need to be served? Or were they just saying the documents that constitute the initiating documents of the lawsuit? Just as it might be a petition, it might be a complaint, doesn't make that much difference. Why do we think that Congress put the kind of importance that you are placing on a document that issues from the clerk of the court at the request of a lawyer as being more important than the thing that the lawyer files in the court in the first place to get it as a ministerial matter? Why do we think that was on Congress's mind when it said the summons and complaint? I would point the panel to the reply brief where there is case law talking about how the FSIA is supposed to be strictly construed, how it's supposed to apply confidence. These are foreign actors who may not necessarily be aware of US procedures. And there is something to be said for a summons. There is something to be said for the official stamp that means a lot more elsewhere than perhaps it should, and perhaps it does here, but it does mean a lot to other countries. And that's- I'm sorry, what does it mean? What does it mean? If the concern is to give notice to the adverse party that there's a proceeding being undertaken in the United States to which they ought to respond if they don't want to lose, what is the additional function of, as you say, the seal or the stamp? It lends the imprimatur or the appearance to a foreign actor that this is a legitimate court proceeding that they need to respond to. And in many ways, there are a lot of technicalities in the law that maybe are archaic, or we should have outgrown by now, but are still there. So let me ask you as a textual matter, since you're focusing on text, why your view is that under the FSIA, we must serve a summons, but we need not serve a complaint. If you're going to be textual, if you're going to live and die by the strict words, I don't understand why you're saying that one document is required, and yet the other is not. You can have a- I'm not necessarily taking a position of whether, if I were to prepare in this action, I would have called it a complaint. In this case, it's a petition, but it's not really here nor there as far as my argument is concerned. We need to take no position on that. We don't need to. If we were going to take- Let me ask you a different textual question, and tell me what would be the flaw with this. The only reason we get down to, what is it, 1608B1, which is the part of the FSIA that allows service by special arrangement, is because of a series of cross-references from other statutes. We get there by Federal Rule of Civil Procedure 4, which directs us there, and 4 comes to us from Section 9 of the Federal Arbitration Act. Now, of course, that's Chapter 1, which doesn't apply of its own force. We're under Chapter 2, which is applying the New York Convention. So we'd get all the way to the root. We're at Sections 208, really, that incorporates Section 1, and it says Chapter 1, which is Section 9 cross-reference, only applies to the extent that chapter is not in conflict with this chapter of the Convention as ratified by the United States. So all of these subsequent cross-references arguably only apply insofar as they do not conflict with the statute that implements the New York Convention. And wouldn't you agree that it would conflict with the New York Convention to require service of a complaint where there is no complaint, and to require service of a summons where there is no summons? And wouldn't it be logical reading be that all these cross-references are incorporating the mode of service and not the identity of the object to be served? So maybe if you could address the question of the cross-references. I don't think there is any conflict to be had between the FAA and the FSIAIA on this. At the end, the FAA speaks more broadly about notice. It doesn't use necessarily the word summons. It doesn't say it has to be a summons and complaint like the FSIAIAIA. It's a notice of emotion. But the FSIA does, and I think because one is more specific, it doesn't necessarily mean it's contradictory. They can be read in perfect harmony. The FAA doesn't specify the form of the notice necessarily, but when you're dealing with a foreign sovereign, it needs to be in the form of a summons and complaint. And that's a perfectly harmonious reading of the statutes. I don't think there's any- So your view is both are required, a summons and a complaint? Yes, but again, I stand by my previous qualification that I'm not going to get bogged down in semantics. If I'm a judge and a litigate comes before me and it has all the characteristics of a summons and complaint, I'm not going to go by the title. I'm going to go by the states. In your view then, if we're not going to get semantics, hang on, what to you are the salient characteristics of a summons that are obligatory and those features that are not obligatory that still, I guess, I don't know what sort of the purpose of it or make it in its heart of hearts as summons. What are the key characteristics? Apparently it's not just notice. Of course, appreciating this as an academic argument says no summons was issued in this case. Well, I would say- What would you require? I would say the main thing is it is identifying the parties to the suit, calling them to the court and most importantly, a stamp and a premature, something that may be looked down upon now, but is maybe not by other parties of the clerk of the court that this is process issued through the court. I mean, there was, I mean, so a new question because no summons is issued at all. So you're saying a document issued by a party then lacks what you would argue is the key attribute that's required for a summons is that it come from a court itself. I think, I mean, there may be instances where the attorneys are effectively allowed to do this on their own, but it needs to be the form of summons adopted by the court. How do you get a summons from the clerk under rule four in the case of a petition for arbitration? Judge Lynch, I've done this myself. I mean, you do it the same way you normally do. If it's electronic, you just request the summons issue. I've never had a problem. You- We're only focusing on one piece. So you come with the petition and you ask for a summons and they give it to you. Yes. Okay. I mean, I'm under oath. It doesn't say that in rule four, but that's okay. I mean, I'm happy to hear of your experience. I mean, I can prove it for the court if necessary. I can brief it further, but I mean, I've done it myself. It's not the first time I've been involved in these kinds of motions and summons. But the main argument it seems to me was on waiver, which seems to me more of a true stretch. I don't know if I can continue because my time seems to be up. But the district court issued an order show cause to determine whether there would be an opposition to the motion to confirm. FMO responded to that motion saying, yes, we want to appear and defend the case. Here's the reason for the delay. Here are our meritorious defenses. And number one in them was lack of personal jurisdiction due to the failure to issue a summons and also service by mail. And that was fully briefed. Fully briefed, the very first document we filed aside from a notice of appearance was that brief. And then in the subsequent motion, the motion that went in actually answering the motion, since that had been fully briefed and the other arguments hadn't, it was referenced in a footnote incorporated. So a judge were incorporating that argument, cited the pages, everything. And in the decision, the judge, the district judge noted the footnotes and you're also contesting personal jurisdiction. I disagree. He didn't really get into the argument we put, but he did. So clearly there was no way for the district judge addressed the issue. I don't understand how there could be a waiver nor would there be any waiver since by voluntary appearing, you're not leaving personal jurisdiction defenses. This is settled law. Mr. Wolfson, I know we've kept you past your time, but if I could ask you one additional question and it goes again towards the question of whether every single statute in the chain of cross-references, whether every word applies or just those ones that are functionally applicable here, what do you make of section nine of the FAA, which requires that if the adverse party is a non-resident, the notice of application shall be served by the marshal of any district within which the adverse party may be found. What do you make of that when you're serving a party who's overseas and by definition is not found in a district with a marshal? I would have to research that issue, but I believe just off the top of my head that that has been interpreted and construed in ways that allow other forms of service to take place. But that's not anything that ever came up in the briefing below or here. So I don't wanna mislead the court by giving an answer off the top of my head. Thank you. I would like to, I guess I reserved three minutes for rebuttal, but I would like to address some of the other issues in the case. I can stop. Take two minutes, go ahead. Yeah, I just wanna briefly hit on the Venezuelan law issues and particularly the civil and criminal orders that were issued because I understand that the history is written by the victor, but we have a record here and we have review by the district court and by your honors. And I think it's important to note that we have the criminal convictions for corruption. We had the arbitrators effectively brush that aside by saying, Mr. Serrao, the person who never, there was a warrant issued for his arrest, but he never became subject to defensible jurisdiction. Mr. Serrao was never personally found to be liable for this. I mean, whether Mr. Serrao was personally liable is irrelevant. What we have is clear opinions from competent Venezuelan courts saying that the whole scheme was corrupt and was the product of bribery and kickbacks and was completely illegal. So that's CME, that's not Mr. Serrao. And so Serrao was a complete irrelevancy because he couldn't get into Venezuelan justice. And on the other order, which I mentioned, which is finding that the CAA, the framework, all of these agreements that this charter party is just one of many agreements, the development contracts, all of it was illegal. And it was illegal for the same reasons that these experts are battling over below, but it's right there. And so the arbitrators said, well, it doesn't mention this one charter party. And it's important for the panel to understand just how vast these arrangements were, how many contracts there were. There were many contracts. And what CMA did is it picked out this one contract or the other contracts with favorable arbitration divisions. And in order to pile in all these other claims to that arbitration, meanwhile, Mr. Serrao himself starts a declaratory judgment action in Venezuela clearly for the purpose of influencing those arbitrations. In fact, if you look at JA1182, the decision even references like, you're using this for arbitration, but bear in mind, it could be used by the other side too. And it finds that it's all completely illegal. And whether or not it mentions the general PR charter party, it mentions the same argument that was used to say the general PR charter party was legal. In fact, it was not legal. Same article five of Venezuelan law. So, I mean, it's just, and by the way, they're talking about it wasn't mentioned. And meanwhile, the only way they were able to apply damages in this case was by linking all the contracts together, saying, oh, it was all inextricably intertwined. So all of these damages flowing from all these agreements, they can just come into the general PR charter party. So the panel, at the same time they set up, it's all just one big contract is saying, well, this decision here, it didn't specifically mention this general PR charter party. It just mentioned the whole framework, the whole CAA, the whole, everything that general PR was part of. This, excuse me, Mr. Wilson, this arbitration that took place was of course something that the contract provided for, right? There was definitely a source of debate below. There was arguments that was subsumed, but to go with your question, I think I can follow you. Yes, the idea was that it was signed and it was illegal for other reasons. And this process of arbitration, does that work by each party appoints a party arbitrator and then the two party arbitrators select a third or is it some other means of selecting the arbitrator? That's the method. I wasn't specifically involved, but I think it went as intended. And the decision of the arbitrators was unanimous, including your party arbitrator, is that right?  Okay. They typically are. Okay, thank you. Thank you, Your Honor. All right. Let us hear from Mr. Paulson. Good afternoon, members of the panel, Bruce Paulson for CME. Let me start briefly with an issue brought up by Mr. Wolfson at the end, and that's waiver. And this is the service argument is one that they did indeed raise in response to Judge Carter's August 14th, 2020 order to show cause. They raised the issue of service in order to seek the relief of an extension or an excusal of their eight or nine month delay in responding to the action. It was only when they brought an appeal. And in fact, the issue was briefed only in the form of that footnote referred to by Mr. Wolfson, referring back to an argument, seeking an excusal to delay opposing the petition and appearing later perhaps than CME may have wished and that they would voluntarily appear and defend. Can I ask you about that point? We had a discussion with opposing counsel about whether he had any case law stating that you must file a summons. Do you have any case law saying definitively from our circuit that you need not file a summons? It seems to me like it's an open question. Now, maybe you have the better of the argument, but would you agree that it's not been settled by our court or the Supreme Court? There are district court decisions in this circuit, but not a circuit court decisions other than Louis Dreyfus versus Vardini, which does clearly say, but it's not an FSIA case, that a summons and complaint is not necessary in a New York convention FAA case. It's not necessary to have a summons and complaint is well-established, I think. The question is, what is the FSIA? How does the FSIA reference to a summons and complaint where these summons and complaint interact with that rule? Yeah, that's the question. I think to use Judge Vardini's term, you look at the chain of references. You start with section six of the FAA that says this is done in the manner provided for the making of motions. You look at the provisions of section nine, that notice of the application will be served upon the adverse party. You look at the last sentence, which is the one that refers to the marshal that service may be found in like manner as other process of the court. And so you have a single step process under the FAA, the procedures of which are incorporated by reference through section 208 of the New York convention. This is an international arbitration, so it applies. So you have the New York convention adopting these processes under the FAA by which you make a motion. And the idea is these parties have agreed to arbitration. They consented to arbitration. They consented to the special arrangement, which comes under 1608B of the FSIA, which provides for the manner of service. And I think the way you- Can I ask you then, and I understand the argument about the chain of cross-references. If we apply, I guess, the lack of case law in point to the question of the award of attorney fees, how can it be said that your opponent acted in bad faith when there was no case on point saying that they were wrong? Maybe we'll say they're wrong, or maybe we won't, but if we were to say they were wrong, wouldn't that be the first time someone was telling them that they were wrong? And why would that be in bad faith for them to litigate an issue that's, as far as I can tell, an open question in our court? If indeed they validly raised it, it was, in fact, not only not preserved for appeal, it wasn't raised and not briefed at all by us. Well, this, excuse me, it's false, and this gets me back to what you started with, which is the waiver argument. Isn't it the case that Judge Carter actually decided on the merits, their argument, and decided that you were right and they were wrong about these questions of manner and how and what needs to be served? He decided that and decided it your way. Yes, and also in a footnote, yes. Yeah, so yes, also in a footnote, I suppose maybe nobody gave as much attention to this as some people might've liked, but don't we have plenty of case law saying that we can decide a question if the district court decided it, even if there was some argument that it wasn't, there might've been some argument that this wasn't properly raised. We have rules. We say that something raised in a footnote isn't good enough. We have rules that say something that incorporates by reference your brief in the district court doesn't count. I don't know whether the district court has the same kind of rules and practices, but if the judge who's deciding the case overlooks the waiver and decides the issue, isn't that sufficient to bring it before us? I suppose arguably it does. At the same time, it was not brief and the parties did not have, essentially it was a surprise to us that it was raised as 0.1 on appeal. Well, sometimes appellate lawyers come up with the brainstorms. That's why having once been in that business, that's why the client comes to you and says, you're a really smart fellow. You're an appellate lawyer. They didn't do the right thing, obviously. They lost us the case, but you can save it for us. And then the appellate lawyer has a brainstorm. And if the appellate lawyer is lucky, he can point to something like a footnote in the district court decision and say, aha, it hasn't been waived, even though the people who litigated it below didn't really do the best possible job, right? I mean, that's what happens. Something comes up as 0.1 in the appellate brief. And if you go back to the district judge, the district judge say, I decided that? I don't even remember deciding that. That's 0.1? I thought this case was about something entirely different, but that happens. Yeah, because other than the footnote, the whole of the opinion is on the Article V defenses, which most pass muster. Yeah. And that I believe is the basis of the courts exercising its inherent power to award fees because of the unjustified refusal to comply with the award. But indeed, the portion that is referred back to in FMO's footnote is about excusing delay and that they would voluntarily appear and defend, although perhaps later than we would have wished as the basis for the relief they sought in raising the service issue, not to overrule the action as they set forth an appeal. But going back to the sort of chain of references, once you get to 1608B, it says summons and complaint. And there is, I suppose, arguably, at least of words, something of a clash between the New York Convention and the FSIA. But I concur that this is about the pleadings required to commence an action under the FAA, under the New York Convention, in a case where that party's consented to jurisdiction in New York. And the fact is 1608 and the special arrangement refers to the manner of service, not what gets served. And the FAA, which, as Hall Street said in 2008, in reference to the summary nature of the proceeding, which supports the strong federal policy in favor of arbitration. It's a summary proceeding and the trial's already been had. The party's consented to this. And the bottom line is it's a petition and a notice of petition. Notice of the application was served. If you read these together and not have the FSIA in some way, shape or form, impliedly repeal the procedures of the FAA, which is highly disfavored under Tynan and other cases. The bottom line is the FAA should be followed. The notice of petition and petition suffice. And under the New York Convention, under Article V, the defenses raised have no merit. And let me speak briefly to FMO's corruption argument, which was addressed in spades in the arbitration. We had two dozen hearings before the three arbitrators. Many of those hearings focused both on Venezuelan law. There were Venezuelan law experts on both the issue of whether there was a valid agreement, which is clear even under Venezuelan law, and the panel agreed, as well as two appearances by a prosecutor from Colombia, from Venezuela, who flew to New York to testify. The panel credited her testimony, but found no direct or circumstantial evidence of corruption. So, and the fact is the FMO had the opportunity to cross-examine Mr. Serrao. They had the opportunity to take discovery, but didn't avail themselves of it. The corruption arguments are of no merit. And they're within the issues to be arbitrated under an extremely broad arbitration clause. The decision should be affirmed. Thank you very much. Mr. Wilson, you reserve three minutes. Although you took more than that, we're happy to hear you reform. Thank you, Judge. Let's go. Thank you, Judge. Briefly, as far as the case law regarding the requirement of a summons under the FSA, I would refer Judge Rondini to our reply brief, there were at least two decisions from the District of Columbia Court and two decisions from the Miami Federal Court in the related cases, one of which was in our double 20HA letter. And that was in the sort of parallel or I guess system proceedings to this, right? The other, another slice of the arbitration, right? Yes, and there were some in London, they're all over the world and in Venezuela itself, which, you know, as far as these issues of corruption and illegality being addressed in spades, the truth of the matter is, FMO has had trouble appearing throughout and in fact defaulted to the tail end of that arbitration. So they weren't there for the closing arguments, they weren't there for anything at the end. But what is there though, aside from the expert opinions that were presented, are the orders of the Venezuelan courts, which I keep coming back to you because I think it just continues to get overlooked. Those arbitrators can say anything they want about what these experts say. We have law. Hard law, both criminal and civil from the Venezuelan courts. And that should put the nails in the coffin of Siamese case. The contract was illegal and it was procured by corruption. Simple as that. Finally, on waiver, obviously it was briefed. It was, whether it was in a footnote because I exceeded page limits or not, it was before the court, the court addressed it. I really think of all the issues in this case, the waiver argument is a stretch. The only, actually the only issue that wasn't briefed was the attorney's fees issue. And there's no dispute about that. It wasn't briefed anywhere. It was in the prayer for relief and then it came out in the award. Unless the court has any more questions, I can rest with that. Thank you, Mr. Wilson. Thank you, Your Honor. And Mr. Paulson, we appreciate the arguments very much and we'll reserve the decision and we are adjourned. Thank you, Your Honor. Thank you. Court is adjourned. Thank you, Justice Olsak. Thank you. Thank you. Thank you. Thank you.